Good morning, your honors. Michael Powell on behalf of Mr. Harold Lewis. It's not, I don't think, a difficult legal issue that we're talking about, but I think the hard part here is the factual significance of what happened at the trial court and Judge McKibben's refusal to give the necessity instruction. And I think if you read the red brief, the government's brief, if you read that, you'd think there was no link between the initial acquisition of the firearm and the events that transpired on April 20th. But the way the evidence came out is that, at least we tried to prove, and the government brought up in its case in chief the initial acquisition of the firearm by Mr. Lewis. And our contention was, and I think it's legally, it's right, and factually based on the evidence that it's presenting, that acquisition was justified under the lesser of two evils. But what was he charged with? What did the indictment charge him with? Ex-felon with possession of a firearm and carrying a concealed firearm or attempted to carry a concealed firearm onto an airplane, your honor. Well, doesn't the acquisition of it carry it back a little farther than we need to be in this case? Well, Judge, I think you've hit it right on the head. The thing is, is that the initial acquisition was, and we never contested that, was several weeks before. But we contend that there's no evidence at all that linked Harold to any possession in the intervening time. In fact, the weapon was, after he took it away from Mr. Bogue, who was trying to attempt suicide, he gave it to his brother Virgil, who then kept it, at least that was Virgil's testimony, in his drawer. And it wasn't until the evening of April 20th, an hour before a plane was going to leave, that they bought a ticket to Portland from Reno. And then, hastily, Virgil and Harold packed this apparent bag that they kept in the office there for these types of trips. And then, at least that's our contention, and we present it to the jury, that the weapon itself got into the bag by accident. And we think that Virgil just threw it in there with some of the dealer plates and stuff. And Harold didn't have any idea that that weapon was in there when he got to the airport. And logically, that makes sense, because he didn't try to hide the fact that that was his bag. And I don't believe anybody in this day and age would knowingly take a firearm into an airport where your carry-on bag is going to have to go through an X-ray detector. When did this event happen? April 20th of 2000, I believe. 2000? Well, that's before 9-11. Right, it was, but it didn't get tried until after 9-11. Well, that may be, but the act of taking it into the airport. But even then, I mean, security, all carry-on bag, even before 9-11, and most airports went through some kind of X-ray. I've been taking my shoes off so long, I can't even remember when I started. I have that same problem, John. I'm beginning to think that you may have to take all your clothes off to get through the airport. Let me see if I understand then. Your suggestion is that he got the gun in a proper way. He was relieving it from a fellow who was threatening suicide. He brought it back to his brother-in-law's shop and gave it to him. So he gave up possession at that point. Yes, John. All right, so then the rest of it is that he didn't know it was there. So what is the, again, it seems your defense is that he didn't know it was there, not how he came into possession of it. Your Honor, here's the problem. When it came down to the- Or was he charged? To come back to Judge Gibson's question, was the charge tied to the original acquisition? Well, it was in the way that the facts were presented by the government, because they put on a lot of information in their case in chief about the acquisition of the gun. Did they argue that the acquisition was illegal? No, they didn't. In fact, what happened is at the argument, the government told the jury that Mr. Lewis was not allowed to have a firearm under any circumstances, and he knew that. And that's the problem that comes up here. Once the government argues that because the judge wouldn't instruct the jury, we had no way to defend that. That was accurate, wasn't it? Well, it is accurate. Well, no, not true. Well, under the way the jury was instructed, yes, Judge Huggins, it was accurate. But, in fact, he is allowed to have under the circumstance of the lesser of two evils, he is justified in possessing that at least temporarily. And that's the essence of the problem. And the jury seemed to be convinced of that. But the indictment was for April 20th. On or about, Your Honor. And we all know, at least under the Kassaman cases and like that, that can extend as far as seven months. And the jury asked a question about that. They sent a note that didn't eventually get answered by the judge because no one could understand how they needed to respond to it because the jury sent a note out asking, well, should we consider other times? And so apparently they understood the on or about thing, and I think that brings up our subsidiary point. If the initial acquisition, which the government first presented in their own case, is not justified, then that becomes 4-4-B in the sense that it goes to Harold's knowledge. I mean, no one ever denied that Harold took that gun from Mr. Bogue at the time to keep him from committing suicide. That was a knowing possession. So now the jury is left with this idea, well, he knew it was he got it from this guy. He did that on purpose. And if that wasn't justified, then nothing else he did was either. And I think it basically defeats our accident thing because the accident is lack of knowledge. It goes exactly to the element that we're defending on in the second half of the defense. I mean, it was a two-pronged defense, and they were both necessary for the jury to have a complete legal understanding of how they analyzed the facts of the situation. With the jury having found guilty on the boarding the airplane charge, wouldn't that have necessarily been that he would have been in possession of the gun at that time? Well, sure. I mean, that's that's that's accurate, Judge. But wouldn't this be harmless then? Because they had to have found that. I don't think that when he went on the airplane. Right. But they would because you could roll them up both in the one thing. But the thing is, if they believe that he didn't he was justified the first time, then then that knowledge that is acquired from that justification goes to the other one. Did he know it was in the bag? I mean, that's that's really the key to the defense and the key to the issue that the jury had to decide. Well, they had to have found they knew was in the bag. But did they find it? Well, did they find that he knew was in the bag because he had illegally acquired it the first time? And that that's what directed their particular decision in this case or not. And I think that's the crux of the problem is the government told him he was not justified in ever having a gun. And I believe they used the thing under any circumstance, which is which, in fact, cuts it out. And we now have no way to respond to that because the judge wouldn't instruct. Well, let's suppose I still trying to understand if he let's suppose that he'd gotten a necessity instruction. So he came into possession of the gun under lesser of two evils. What's that got to do with the events at the airport? Well, then because then it strengthens our argument, Judge, that, look, he he was justified in getting it, even though he's an ex felon. What difference does it make? Well, it makes a difference to his knowledge and whether or not he knew that the gun was in the bag. But I still understand whether he had it at that point lawfully or not. You know, time intervenes and he couldn't keep the gun in his possession. Once he I mean, even the necessity defense wouldn't allow him to keep the gun in his possession more than necessary to take it away. And that was that was our that was our defense that, in fact, there was no evidence that after he turned the gun over to his brother who could legally have it, that he ever had that weapon again other until that bag was packed on the in the rush to the airport on the on. And that was that was the crux of your defense. Yeah. OK. OK. You want to save time for this? OK. All right. We'll hear from the government. Thank you, ma'am. Please. A court run ratio. Assistant U.S. attorney out of Reno. The way I understand this case and the way the defense is framing it, they want an instruction on a defense that was not applicable because of the time that it passed. Had Mr. Lewis taken the gun from a suicidal person within a matter of minutes or whatnot, it might have been an arguable situation. But that's not what we have here. We have a time break. We have a break in the chain of custody of the weapon, if you will. When you look at the brother's testimony in the defense theory, a trial was actually that the defendant did not know the gun was in the airport or in the bag when he went to the airport. That's their theory of defense. It's a question of fact to be determined. Could you explain? I was reviewing again the closing by the government by Mr. White. And he starts to touch on that acquisition theory. That he says to tell starts out by telling the jury would not be appropriate in this case to decide to give the defendant some kind of a break here because you think he stepped to the plate, did the right thing with regard to this poor Mr. Bogue and his emotional and psychological problems. That certainly is commendable, admirable, but it doesn't really have anything to do with this case. If you think about it, because we've got a time frame, given this kind of a case, we've got a huge period of time here where if in fact, and you've got to think about the facts here, because Mr. Bogue did not testify in any way about having had the gun taken away from him by the defendant, he starts to argue the merits of that story. And then there's an objection and the judge says I'm going to steer you away from it. And so Mr. White comes back and says the only evidence in the record here about the acquisition of the gun came out of Special Agent Keeney's interview of the defendant on April 25th, where the defendant advised Agent Keeney that Bogue had given the gun to Lewis because he had recently gotten released from jail after being convicted of spousal abuse or something like that. No discussion about suicide. And then he goes on off. So what's the government at that point making an issue of the credibility of the acquisition? I believe what Mr. White was trying to get across to the jury is not to bite off in effect on jury nullification and sympathy, that what he was trying to show that there is a separate and distinct time frame that even if all this happened 30 days before or approximately, there's been a break in time. We're at the airport. You can't have a gun at an airport unless obviously you're a law enforcement agent or someone that's authorized to have it, and not to get misled by confusion about issues that don't relate to April 20th, the date that was charged. He was charged with discreet acts on April 20th, being an ex-felon in possession, and possessing a firearm while attempting to board an aircraft. The issues there, did he possess it? Well, there's no question, no argument what was in the bag. It came down to whether he knew or not, a question to be decided by the jury. And I think one thing that's of interest there, when he was asked what was in the bag, he said maybe some bullets. So bullets also would have been prohibited being an ex-felon. So there is some knowledge that he knew that some type of firearm was there. Was he charged with possession of bullets and the indictment? No, he wasn't. He was charged with possession of a firearm. How did this come into evidence in the first place, this first incident? I believe it was raised through the examination of the FBI agent that questioned Mr. Lewis. I believe it was Agent Keeney who talked about some of the explanation that was provided. Did the prosecution bring it in or the defense? To be honest with you, Judge, I don't recall from reading the record. I'd have to. It seems like it has nothing to do with the case. I'm drawing a blank, Judge. I don't just I just don't recall. I looked at the transcript and I know it was going back and forth and I was looking at the facts. I know that the defense was given Agent Keeney a rough time for a lack of notes, and they were trying to develop their theory of the case through cross. I don't know if it originally came out undirected or not. But anyway, the issue here in this particular case is did the court err in the instructions or was the defense theory of the case adequately covered? And given the fact that it had to be knowledge, we believe that the instructions were clearly given. The jury was properly charged. And if there was any error at all in argument, it's harmless, especially when jurors are instructed, as they always are, that arguments of counsel are not evidence and not to be considered in the case, only to help them understand the evidence. The facts of April 20th are clear. The jury found he knowingly possessed a weapon and possessed it while trying to board an aircraft. And we believe that the conviction should stand. And if there are no questions, I would submit it at this point. Okay. Judge Gibson, any questions? No questions. Thank you. Unless any of the court has a question, I'll submit it on argument. Everybody seems to understand exactly our point. How did that first incident come into the evidence? Nobody testified about that. Who asked him, though? Was it Cross or was it Brad? I think it was, you know, Judge Hugg, I don't remember exactly, but I believe that the government produced that as part of Agent Keene's testimony. And, you know, to tell you the truth, Agent Keene might have gone off the rails on this one himself because he actually got called down by Judge McKibben for a gratuitous comment in his testimony going way beyond the questions that were asked. And he's a new agent, and, you know, he might have gone off the rails on his own. All right. Okay. Thank you. Thank both counsel for the argument. The case just argued will be submitted.
judges: Hug, Gibson (8th Cir.), Fisher